UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

DANIEL EDWARDS, JR., ET AL.        §
                                                        §
v.                                                     §        CIVIL NO. 4:19-CV-140-SDJ
                                                        §
JUNIOR STATE OF AMERICA         §
FOUNDATION, ET AL.                      §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Junior State of America Foundation, Inc's Motion to Dismiss Pursuant to Rule 37 for Failing to Comply with a Court Order to Produce Electronically Stored Information, (Dkt. #94). Having reviewed the briefing and the applicable legal authorities, the Court concludes that the motion should be **GRANTED in part**.

## I. BACKGROUND

### A. Daniel Edwards, Sr. Files a Complaint with JSA.

In August 2015, Plaintiff Daniel Edwards, Jr., a black male, was a high school student in Plano, Texas. Cole Harper—a white male and a named Defendant who was never served and was, consequently, dismissed—was a high school student in Fort Worth, Texas. Both Edwards, Jr. and Harper were student members of Junior State of America ("JSA"), a youth organization designed to educate high school students in government by, among other things, allowing students to role play as government actors. *See* (Dkt. #94 at 4; Dkt. #95 at 6). In August 2015, Harper was JSA's student Governor of Texas, and Edwards, Jr. sought a position in Harper's cabinet.

1

On August 10, 2015, Daniel Edwards, Sr.—Daniel Edwards, Jr.'s father—filed a complaint with JSA, alleging that Harper sent racist and homophobic Facebook messages to Edwards, Jr. (Dkt. #108-1 at 14–15). Responding to the complaint, JSA Chief Executive Officer Jeff Harris, a black male, and JSA Program Director Steve Baynes, a white male, initiated an investigation into Harper's alleged actions and suspended Harper from participation in JSA for the course of the investigation.

Pursuant to the investigation, JSA, among other actions,[1] questioned Harper about the alleged messages and searched Harper's phone. *See* (Dkt. #94-1). JSA did not find any evidence that Harper had sent the alleged messages. JSA further found the images provided in Edwards, Sr.'s complaint—which included .jpeg images of part of a screen—to be incomplete. Accordingly, JSA asked Edwards, Sr. to provide alternative or additional evidence, including, for instance, actual screenshots of the messages or the precise date and time of the messages. However, Edwards, Sr. failed to provide any of the requested documentation. Ultimately, in October 2015, after a two-month investigation, JSA reinstated Cole Harper, finding insufficient evidence to conclude that Cole Harper sent the above-described messages.[2]

---

[1] An October 8, 2015 letter from Jeff Harris to Edwards, Sr. describes in detail the actions taken by JSA to investigate Edwards, Sr.'s complaint of harassment and racial bigotry allegedly directed at Edwards, Jr. Among those actions was a telephone call between Harris and Edwards, Jr. That "call came to a conclusion after Daniel Jr. gave [Harris] the ultimatum of immediately removing Cole from his position in JSA or declaring that [Harris] personally 'stand[s] with David Duke,'" a former Ku Klux Klan leader. (Dkt. #94-1).

[2] Additionally, on April 24, 2016, Edwards, Sr. filed a separate complaint with JSA, this time with JSA's Fair Elections Committee ("FEC"), accusing certain JSA members of violating the organization's election rules. (Dkt. #108 at 68–69). On April 28, 2016, the FEC responded to the Complaint, concluding that the two JSA peers accused of violating the organization's election rules were not responsible for the alleged violations and therefore should not be penalized. (Dkt. #108 at 70).

**B. The Edwardses File Suit and Fail to Comply with Discovery Obligations.**

On May 16, 2018, Edwards, Jr. filed suit in the Northern District of Texas, purporting to invoke "the United States Constitution, . . . 42 U.S.C. §§ 1981 and 1985, and the Constitution and laws of the State of Texas." (Dkt. #1 ¶ 4). At its core, Edwards, Jr.'s complaint centers on and arises out of the alleged Facebook messages described above (hereinafter "the Messages"). *See generally* (Dkt. #1). On February 26, 2019, the case was transferred to this Court, at which point a second attorney appeared on behalf of Edwards, Jr., replacing the first. At a July 31, 2019 scheduling conference, the parties discussed the need to produce certain electronically stored information ("ESI") that could authenticate the Messages. Then, in September 2019, Edwards, Jr. again switched counsel, this time retaining Kim T. Cole. At that juncture in the litigation, Edwards, Jr.'s parents—Daniel Edwards, Sr. and Felicia Edwards—joined the suit as Plaintiffs.

On December 11, 2019, JSA served written discovery requests to the Edwardses, seeking production of, *inter alia*, ESI from Edwards, Jr.'s Facebook Messenger account that could prove or refute the authenticity of the alleged Messages. One such request, directed to Edwards Jr., sought production of "all Facebook Messages in HTML format between [Edwards, Jr.] and Cole Harper between January 1, 2015, and December 31, 2018," and explained how to produce messages in HTML format. (Dkt. #94-3 at 6, 11–12). Native files are those that originate from the actual application from which they were produced. They are produced in HTML or JSON format and contain metadata that can be used to certify

the authenticity of the document. JSA thus sought native files for a self-evident reason: authentication of the Messages.

Edwards, Jr. never objected or responded to any of the Requests for Production that were served upon him on December 11, 2019. (Dkt. #70 ¶ 13). Instead, for the next nine months or so, Plaintiffs collectively failed to respond to JSA's repeated efforts to procure the information sought in JSA's initial requests for production as to the above-described ESI.  Plaintiffs failed to  produce a single requested document. The record before the Court amply demonstrates JSA's extensive efforts to procure this ESI—principally aimed at obtaining a single file, the alleged racist and homophobic Messages between Cole Harper and Edwards, Jr. *See* (Dkt. #70-3 at 2– 49).  In addition to the discovery-related communications between JSA and Plaintiffs, JSA has also submitted  an affidavit recounting in detail JSA's efforts to obtain the requested ESI, as well as Plaintiffs' failure and refusal to comply with their discovery obligations. (Dkt. #70-3 at 4–6). The following examples are illustrative of Plaintiffs' conduct in the course of this litigation:

- JSA filed its requests for production on December 11, 2019. Edwards, Jr. was set to be deposed on March 13, 2020. For four months, Plaintiffs failed to produce, or otherwise properly object to producing, a single requested document, despite promises (and an obligation) to do so. JSA's counsel contacted Plaintiffs on numerous occasions inquiring about and reminding Plaintiffs of their duties to produce documentation or otherwise supplement any responses or objections. In response, Plaintiffs' counsel (Ms. Cole), about forty-eight hours before the scheduled deposition of Edwards, Jr., responded with a single sentence: "Is there anything in particular you're seeking?"

- For the next two months, Plaintiffs' counsel cited "ISP" (internet service provider) issues and an undisclosed injury as justifying Plaintiffs' continued failure to produce documents. On May 25, 2020, more than five months after JSA served its requests for production and without having produced any

documents, Plaintiffs' counsel asked JSA's counsel in an email: "What discovery issues are outstanding?"

- JSA's counsel sent Plaintiffs' counsel follow-up messages as to the outstanding discovery on July 1, July 9, and July 20, 2020, all of which went unanswered.

(Dkt. #70-3).

Consequently, on September 3, 2020, JSA filed a motion to compel production of electronic files from Plaintiff Daniel Edwards, Jr., (Dkt. #70), along with a motion for sanctions against Edwards, Jr., (Dkt. #71), for failure to comply with discovery requests. Edwards, Jr. failed to respond either to the motion to compel or the motion for sanctions. The Court held a hearing on the motions and, on October 13, 2020, upon consideration of the two motions and the applicable law, and for the reasons provided in the order, the Court granted JSA's motions to compel production of electronic files from Edwards, Jr. and for sanctions against Edwards, Jr. (Dkt. #92). Only *after* the Court had granted the motion to compel and for sanctions did Edwards, Jr. make purportedly responsive productions to JSA.[3] First, Edwards, Jr. presented two expert

---

[3] Edwards, Jr. also argued, in a motion to reconsider, that because he made these productions on October 15, 2020, and October 30, 2020, purportedly responsive to JSA's December 11, 2019 requests for production, he had fully complied with JSA's requests and the Court's order to compel and thus should not have to pay the attendant sanctions. (Dkt. #96 at 5–9, 11). This argument reflects a fundamental misunderstanding of orders to compel and for sanctions, which necessarily go hand-in-hand and issue in response to past failures to adhere to the Rules of Civil Procedure.

Equally puzzling is Plaintiffs' similar assertion that JSA's motion to compel was improper because "[t]he agreed deadline for discovery (October 15, 2020) was forty-two (42) days away when the Defendant filed their Motion to Compel and Motion for Sanctions on September 3, 2020." (Dkt. #96 ¶ 12). Under the Court's Second Amended Scheduling Order, October 15, 2020, was the date by which all discovery in the case was to be completed, (Dkt. #62 at 2), not the deadline for Edwards, Jr. to respond to JSA's specific requests for production concerning ESI, which was January 10, 2020, more than ten months earlier. Edwards, Jr.'s position is that he is free to ignore and refuse to respond to specific discovery requests for many months, so long as he ultimately produces the requested documents by the

affidavits: one dated April 20, 2016, and produced nearly five years later on October 15, 2020, signed by Travis Dirr, (Dkt. #96-2, #96 ¶ 6), and one executed and produced on October 30, 2020, signed by Graciela Rubio, (Dkt. #96-1). Both Dirr and Rubio are, or were, affiliated with a digital-forensics firm originally called Protegga, LLC and now called Rubio Digital Forensics. (Dkt. #96 ¶ 8). Second, Plaintiff produced a forensic report from Rubio Digital Forensics—formerly Protegga, LLC—which included certain electronic files recovered from Edwards, Jr.'s smartphone. *See* (Dkt. #94 ¶ 7); (Dkt. #104-1 at 33–102); *see generally* (Dkt. #104-1–4).[4]

However, despite retaining Dirr in 2016, procuring an affidavit from Dirr in 2016, and preserving nearly fifty megabytes of information relevant to the case with Protegga in 2016, and despite the expert-designation deadline of August 12, 2020, (Dkt. #62 at 1), Plaintiffs never before disclosed the identity of either expert, produced the 2016 affidavit, or noted the existence of the data preserved with the experts to either JSA or the Court.

## C. Plaintiffs Ultimately Confirm that Edwards, Jr. Permanently Deleted his Facebook Account, thus Destroying the Alleged Messages.

Now before the Court is JSA's motion to dismiss pursuant to Rule 37. In that motion, JSA, among other things, further refutes Plaintiffs' account that the information contained in Edwards, Jr.'s October 2020 productions was previously

---

close of discovery. This contention, lacking any foundation in law, was rejected by the Court. (Dkt. #122).

[4] Despite purporting to attach these documents to the motion for reconsideration, Plaintiffs first provided the Court these files as additional attachments to their response to JSA's instant Rule 37 motion. *Cf.* (Dkt. #96-1); (Dkt. #104).

unavailable.[5] Namely, JSA observes that Travis Dirr, the expert affiliated with Protegga LLC—based in Plano, Texas, where Plaintiffs reside—worked at Protegga LLC until 2018. Further, the digital forensics company formerly known as Protegga has operated continuously since Plaintiffs first retained the firm in 2016 until today, although the company took on a new name, Rubio Digital Forensics, in April 2019. (Dkt. #94 ¶¶ 8–9). Thus, as JSA correctly notes, Protegga was the predecessor to Rubio Digital Forensics. Consistent with this background of Protegga and Rubio, when one enters "protegga.com" into a web browser, the searcher is redirected to "rubioforensics.com." Despite the expert affidavit's assertion that Edwards, Jr.'s Facebook information was forensically preserved sometime in 2016, Plaintiffs did not disclose any information about Protegga, Dirr, Rubio Forensics, or the preserved information until October 2020, well after the relevant discovery deadlines had lapsed and after the Court had already granted JSA's motion to compel and for sanctions as to the ESI.

Significantly, Edwards, Jr.'s belated disclosures did not include the native Facebook-message files, *i.e.*, proof of the alleged Messages in JSON or HTML format, as requested by JSA and as required by Court order. *See* (Dkt. #99 ¶¶ 12–13).[6] In

---

[5] Specifically, Plaintiffs attest, in describing the Protegga-preserved Facebook and cellphone data, that "Plaintiffs had been unable to locate their copy of the data and only recently happened to find the drive containing the data that had been retrieved in 2016." (Dkt. #96 ¶ 5).

[6] Protegga preserved Edwards, Jr.'s Facebook and cellphone data somewhere between March and May 2016. Plaintiffs' October 2020 disclosures contain hundreds of pages of documents preserved by Protegga in spring 2016, including many allegedly native-file Facebook conversations, although Schiff disputes whether the Rubio forensic report contains data collected directly from Edwards, Jr.'s Facebook account, (Dkt. #94-6 ¶ 12). The October 2020 disclosures do not include the alleged Harper Messages in native-file form. This means

JSA's Rule 37 motion, and in response to Plaintiffs' October 2020 production of the Dirr and Rubio affidavits and the attendant ESI, JSA, among other things, submitted its own expert affidavit from Yaniv Schiff, a computer forensics expert. (Dkt. #94-6).[7] As Schiff explains in his affidavit: "Facebook data is the most authentic and reliable source . . . it is incredibly easy to create fake Facebook conversations using online tools, however it would be very difficult to fabricate a conversation on the Facebook platform itself . . . ." (Dkt. #94-6 at 3; Dkt. #99 at 13). Therefore, "[a]ny conversations depicted in the supposed screenshots must be validated against the Facebook data itself." (Dkt. #94-6 at 3). Plaintiffs do not contest these facts in their response to the instant motion. *See generally* (Dkt. #103).

Accordingly, upon Edwards, Jr.'s production of the expert affidavit and forensic report, JSA submitted a request to Plaintiffs' counsel on October 16, 2020, to produce the requested native Facebook files. Edwards, Jr. then filed a Motion for

---

that, if the Rubio report contains actual Facebook data, as Plaintiffs allege, Edwards, Jr. must have deleted the alleged Messages prior to deleting his Facebook account and between August 2015 and May 2016. In fact, Plaintiffs' expert states: "Because Mr. Harper and Mr. Edwards stated that each individual deleted the messages between himself and the other party, those messages were not downloaded using X1 Social Discovery." (Dkt. #96-1 ¶ 28). But the Court is not aware of any admission by either Cole Harper or Edwards, Jr. that either of them deleted the messages between himself and the other individual. Further, if it is true that Edwards, Jr. deleted the alleged Messages between himself and Cole Harper prior to May 2016, this could support a finding of deliberate spoliation.

[7] The Court may consider the Schiff affidavit under Federal Rule of Civil Procedure 26(a)(2)(D)(ii), which governs the time allowed to disclose expert testimony. Pursuant to Rule 26(a)(2)(D)(ii), expert testimony may be disclosed "within 30 days after the other party's disclosure" "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Here, JSA produced an expert affidavit within thirty days of Plaintiffs' submission of their expert affidavits. The sole purpose of Schiff's affidavit is to refute Plaintiffs' expert testimony as to the authenticity of screenshots as compared to native files.

Reconsideration, (Dkt. #96), of the Court's order granting the motion to compel and the motion for sanctions. In that motion, Edwards, Jr. contended, *inter alia*, that: (1) Plaintiff's October 15, 2020 and October 30, 2020 productions satisfied JSA's requests for production (and absolved Plaintiffs' previous failure to produce), (Dkt. #96 at 3, 4); (2) the requested information was previously unavailable to Plaintiffs, (Dkt. #96 ¶ 5); and (3) Plaintiffs cannot produce the native-file Messages because they have been permanently deleted, *see* (Dkt. #96 ¶¶ 1, 4, 13). The Court, after considering the motion, the response, and the applicable legal authorities, concluded that the motion for reconsideration should be denied. (Dkt. #122).

In the instant Rule 37 motion, JSA requests one of three forms of relief, namely that the Court: (1) dismiss Plaintiffs' complaint against JSA with prejudice for failing to comply with discovery rules and this Court's order compelling production of certain ESI that is central to all of the issues in this case; (2) strike Plaintiffs' pleadings of alleged facts pertaining to alleged racist and homophobic Messages sent by Harper, and/or; (3) exclude all evidence and testimony of the purported text exchange between Edwards, Jr. and Harper because Plaintiffs have failed to produce ESI that would either prove or refute the authenticity of such Messages. (Dkt. #94 ¶ 1). JSA invokes three subsections of Federal Rule of Civil Procedure 37—subsections (b), (c), and (e)— as independently justifying one or more of the above-described remedies. Below, the Court considers whether each subsection is applicable in the instant case.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2)(A) authorizes courts to impose sanctions for failure to obey a discovery order. A district court has broad discretion to determine an appropriate sanction under Rule 37(b), but this discretion is not unlimited. *Chilcutt v. United States*, 4 F.3d 1313, 1320 (5th Cir. 1993). To impose the most severe sanctions, *i.e.*, striking pleadings or dismissing a case, a court must find bad faith or willful misconduct. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488–89 (5th Cir. 2012). However, to impose more limited sanctions— as relevant here to JSA's third requested remedy, excluding certain pieces of evidence—the Court need not find bad faith or willfulness. *Id.* Hence, "[t]he flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed." *Chilcutt*, 4 F.3d at 1322 n.23.

Further, Federal Rule of Civil Procedure 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c). "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." *Id.* "[T]he presumptive sanction under Rule 37(c) for failing to comply with Rule 26(a) or Rule 26(e) is the exclusion of the information" in question. *Flores v. AT&T Corp.*, No. EP-17-CV-00318-DB, 2019 WL 2746774, at *9 (W.D. Tex. Mar. 27, 2019).

10

Finally, under Rule 37(e), "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e), (e)(1).[8]

Here, the Edwardses arguably violated the Court's October 13, 2020 order, thus subjecting them to sanctions under 37(b)(2)(A). However, because the Court concludes that the most extreme sanctions—dismissing the case altogether or striking pleadings—are inappropriate here, the Court need not reach the question of whether Plaintiffs violated Rule 37(b). This is because the Edwardses plainly violated Rules 37(c) and 37(e)(1), each of which supports the third requested remedy: the exclusion of certain items of evidence. Thus, the Court will consider the applicability of and potential sanctions under Rules 37(c) and (e) only, as described below.

### III. DISCUSSION

## A. Rule 37(c)

### 1. Whether Rule 37(c) Applies

Under Federal Rule of Civil Procedure 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

---

[8] Where a showing has been made of *willfully* depriving the opposing side of evidence, Rule 37(e)(2) applies. That rule provides that a court, "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." FED. R. CIV. P. 37(e)(2).

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). In turn, Rule 26(a)(1), which concerns required initial disclosures, provides that a party *must*, without awaiting a discovery request, provide to the other parties: (i) the name, as well as other contact information, of "each individual likely to have discoverable information—along with the subjects of that information." FED. R. CIV. P. 26(a)(1)(A), (A)(i). Further, Rule 26(a)(2)—which governs disclosures related to expert testimony—provides, in relevant part: "In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A). Finally, under Rule 26(a)(2)(D), "[a] party must make these disclosures at the times and in the sequence that the court orders," *i.e.*, consistent with the governing scheduling order.

Here, Edwards, Jr. has produced an affidavit from an expert, Travis Dirr, retained in early 2016. In fact, the Dirr affidavit, which pertains to the forensic preservation of relevant ESI—including Facebook and cellphone data from Edwards, Jr.—was dated April 20, 2016. (Dkt. #96 ¶ 8). However, Plaintiffs never disclosed this expert, the attendant affidavit, or the existence of the forensically preserved ESI to either JSA or the Court until October 15, 2020—more than four-and-a-half years later and despite the expert-designation deadline of August 12, 2020. (Dkt. #62 at 1–2). Moreover, Plaintiffs failed to produce the Rubio affidavit and attendant data until October 30, 2020. (Dkt. #96-1 at 10). These belated disclosures constitute clear

12

violations of: Rule 26(a)(1)(A), which requires that Plaintiffs provide identifying information of "each individual likely to have discoverable information"; Rule 26(a)(2)(A), which directs parties to disclose the identities of any individual that the party may call as an expert witness at trial; and Rule 26(a)(2)(D), which mandates that a party make expert disclosures by the court-ordered deadline, in this case August 12, 2020, at the latest. Because Plaintiffs clearly violated Rule 26(a), Rule 37(c) sanctions are available. The Court therefore must consider whether and which sanctions should issue.

### 2. Whether and Which Sanctions Should Issue Under Rule 37(c)

Given the plain text of Rule 37(c), recited above, "the presumptive sanction under Rule 37(c) for failing to comply with Rule 26(a) or Rule 26(e) is the exclusion of the information" in question. *Flores*, 2019 WL 2746774, at *9. However, "[i]n addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." *Id.*

Here, the Court concludes that the presumptive sanction is suitable. Underpinning Rule 37(c)—and, by proxy, Rule 26(a) and (e)—is the critically important need for timely and complete disclosure of certain relevant information during the course of litigation. The opposing party's entitlement to, for instance, initial and expert disclosures is not a formality; to the contrary, a party's legal position and strategy depends on timely receipt of such information. By failing to comply with the Rules of Civil Procedure that govern initial and expert disclosures,

as well as court-ordered deadlines, a party both prejudices its opponent and hampers the litigation as a whole. In this instance, JSA was forced to, among other things, abandon its scheduled deposition of Edwards, Jr. precisely because Plaintiffs had failed to produce (or otherwise adequately object to) the requested ESI. Due largely to Plaintiffs' non-adherence to the rules of discovery, not a single deposition has yet been taken in this case, which was filed in 2018 and which arises out of events occurring in 2015. Thus, Plaintiffs' failure to make relevant expert disclosures was not "substantially justified or . . . harmless," as required to excuse the failures. FED. R. CIV. P. 37(c). The appropriate sanction here is to exclude the Dirr affidavit and Rubio affidavit as untimely expert disclosures in violation of Rules 26(a)(2)(A) and (a)(2)(D) and the forensically preserved data that Plaintiffs produced in October 2020 as violative of Rule 26(a)(1)(A).

## B. Rule 37(e)

Under Federal Rule of Civil Procedure 37(e), "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e), (e)(1). For instance, whereas "an inappropriate (e)(1) measure might be an order striking pleadings related to, or precluding a party from offering any evidence in support of, the central or only claim or defense in the case . . . it may be appropriate to exclude a

specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence." FED. R. CIV. P. 37(e)(1) advisory committee's note to 2015 amendment.

### 1. Whether Rule 37(e)(1) Applies

Below, the Court considers in turn Rule 37(e)'s four predicate elements that must be established before imposing sanctions: namely, that a party was (i) obligated to preserve ESI (ii) but did not do so (iii) because it failed to take reasonable steps to preserve it, and (iv) the ESI cannot be restored or replaced. *See, e.g.*, *Balancecxi, Inc. v. Int'l Consulting & Rsch. Grp.*, No. 1:19-CV-0767-RP, 2020 WL 6886258, at *12 (W.D. Tex. Nov. 24, 2020).

### i.

"A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). In turn, evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. FED. R. EVID. 401.

Here, it is indisputable that the alleged Messages are not only relevant but essential to the instant litigation. It is likewise indisputable that Plaintiffs have known as much since the conduct occurred that gave rise to the suit. First, Daniel Edwards, Jr. took a screenshot of the alleged Messages in August 2015, as soon as the alleged conduct occurred, which, in turn, Edwards, Sr. promptly sent to JSA

executives in his formal complaint on August 10, 2015. *See, e.g.*, (Dkt. #94-1 at 3). Second, on March 1, 2016, the Edwardses purportedly sought to forensically preserve Edwards, Jr.'s Facebook and cellphone data. (Dkt. #96-1 ¶¶ 4–5). Third, in the very first argumentative sentence of Plaintiffs' Complaint, Edwards, Jr. invoked the Messages. (Dkt. #1 at 3 ¶ 5; Dkt. #35). It would be difficult to begin the Complaint any other way; the alleged Messages precipitated all of the events in question. It is therefore evident that Plaintiffs knew that the evidence in question—the alleged Messages from Harper to Edwards, Jr.—was relevant. At a bare minimum, though, it cannot be disputed that the Edwardses "should have known that the evidence may be relevant." *See Guzman*, 804 F.3d at 713.

Further, Plaintiffs cannot persuasively contend that they did not know or should not have known of their need to preserve the *actual* Messages as opposed to screenshots thereof. First, Plaintiffs, rather than appearing *pro se*, were represented by counsel, who could and should have apprised Plaintiffs of the Best Evidence Rule. Pursuant to Federal Rule of Evidence ("FRE") 1002, the so-called "Best Evidence Rule" provides that "[a]n original writing, recording, or photograph is required to prove its contents unless these rules or a federal statute provide otherwise." As it is applied to ESI, FRE 1001(d) provides that "original" "means any printout – or other output readable by sight – if it accurately reflects the information." Here, the screenshots will not suffice as an "original" because the screenshots are not an "output" that "accurately" reflect the information. Only native files can ensure authenticity. Additionally, although the Best Evidence Rule allows for an original

"photograph" to prove the contents of the photograph, this does not mean that the screenshot here can be used to prove that Harper sent the Facebook Messages contained in the screenshots. Instead, the screenshots prove only that Edwards, Jr. took a screenshot containing what appears to be Facebook Messages—not that the Messages are authentic or that Harper indeed sent the Messages. Second, however, one need not be familiar with the Best Evidence Rule to understand that the actual Messages may be important in proving that someone sent the Messages in question and that screenshots may be insufficient to that end. That the actual Messages may be relevant to the instant litigation is self-evident. Accordingly, the Edwardses had a duty to preserve the native files, *i.e.*, the actual alleged Facebook Messages, because plaintiffs had either actual or constructive notice as to the files' relevance.

### ii.

Next, the Court considers whether Plaintiffs failed to preserve the ESI in question. It is apparent that Plaintiffs failed to preserve, and now permanently lack access to, the native HTML or JSON files (if such Messages ever existed), containing the alleged racist and homophobic Messages sent by Harper. Specifically, Plaintiffs repeatedly argue that it is presently impossible for them to access the native Facebook-message files requested in the December 11, 2019 requests for production, the production of which has been compelled by this Court. Furthermore, the Rubio affidavit provides that "[i]n accordance with the Service Agreement [between the Edwardses and Protegga], Protegga, LLC maintained copies of the forensic images for one (1) year," after which "Protegga, LLC destroyed the forensic images in its

17

possession on or after June 19, 2017." (Dkt. #96-1 ¶ 6). Nevertheless, Plaintiffs never contacted Protegga within that year to recover the files or to extend the Service Agreement. Second, if Plaintiffs' assertions and supporting affidavits are false—and the native files do exist and are accessible—Plaintiffs would likely become subject to Rule 37(b)(2)(A) sanctions for disobedience of a Court order, namely the Court's October 13, 2020 order granting JSA's motion to compel and for sanctions. As it stands, it appears that Plaintiffs have permanently lost access to the native files containing the actual alleged Messages. Thus, element (ii) is satisfied.

### iii.

Next, the Court considers whether the loss of the aforementioned ESI occurred because of Plaintiffs' failure to take reasonable steps to preserve the ESI. The "reasonable steps" element is clearly satisfied.

To preserve the ESI in question, Edwards, Jr. needed only to *not permanently delete* his Facebook account long enough to download the files in question, a step which requires only a brief series of clicks and a matter of seconds to accomplish. (Dkt. #94-3 at 11–12). First, one can deactivate a Facebook account temporarily. Edwards, Jr. did not elect to temporarily deactivate his account; rather, at some point between his supposedly taking screenshots of the alleged Messages and September 2020, Edwards, Jr. permanently deleted his Facebook account, thus permanently barring access to the files in question. Clearly, Edwards, Jr.'s failure to keep his Facebook account active long enough to download the files in question constitutes a brazen failure to take reasonable steps to preserve the pertinent ESI. In fact,

18

Edwards, Jr.'s permanent deletion of his Facebook account after the conduct in question and potentially during the midst of this litigation raises serious questions about deliberate spoliation of evidence, although JSA has not at this point met its burden to show by a preponderance of evidence such willfulness. In summary, Plaintiffs—at a bare minimum—failed to take reasonable steps to preserve the actual Facebook Messages in question and quite possibly engaged in deliberate spoliation.

### iv.

As to the fourth and final element—that the ESI cannot be restored or replaced—it is apparent that the ESI in question is permanently gone and has been since Edwards, Jr. permanently deleted his Facebook account. As explained in subsection (iii), *supra*, it appears that Edwards, Jr.'s Facebook account is permanently deleted and, by proxy, that the data in question are permanently erased or otherwise impossible to access.[9] If this is not so, Plaintiffs would likely become subject to Rule 37(b)(2)(A) for failure to obey a Court order, specifically the Court's October 13, 2020 order granting JSA's motion to compel.

Moreover, neither a different source nor further discovery could adequately replace the data that Plaintiffs failed to preserve. *See* FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment ("Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."); *accord Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 46 (D.D.C. 2019). The only other potential sources of the Messages are: Cole Harper, who

---

[9] The parties agreed, among other occasions, at the September 18, 2020 hearing that access to the above-described ESI cannot be achieved via Facebook directly.

has consistently denied his sending the Messages and submitted to a search of his phone, which produced no evidence of the Messages, and; the data preserved by Protegga in 2016, which does not include native files of the Messages. In sum, it is clear that Edwards, Jr. was obligated to preserve the ESI (*i.e.*, the actual files, not a screenshot thereof) reflecting the alleged racist and homophobic Messages, that Edwards, Jr. actually failed to preserve these files and failed to take reasonable steps to do so, and that the ESI in question cannot be restored or replaced. Accordingly, the predicate elements of Rule 37(e)(1) are met.

### 2. Whether and Which Sanctions Should Issue Under Rule 37(e)(1)

The Court must now consider whether to impose sanctions and, if so, which sanction(s) should be imposed. The Advisory Committee's notes attendant to the 2015 amendment of Rule 37 provide, in relevant part, as follows:

> Once a finding of prejudice is made, the court is authorized to employ measures "no greater than necessary to cure the prejudice." The range of such measures is quite broad if they are necessary for this purpose. There is no all-purpose hierarchy of the severity of various measures; the severity of given measures must be calibrated in terms of their effect on the particular case. But authority to order measures no greater than necessary to cure prejudice does not require the court to adopt measures to cure every possible prejudicial effect. Much is entrusted to the court's discretion.

> In an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court, such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies . . . An example of an inappropriate (e)(1) measure might be an order striking pleadings related to, or precluding a party from offering any evidence in support of, the central or only claim or defense in the case. On the other hand, it may be appropriate to exclude a specific item of evidence to offset prejudice

20

caused by failure to preserve other evidence that might contradict the excluded item of evidence.

Both the plain text of Rule 37(e) and the attendant Advisory Committee notes, recited above, establish that a showing of prejudice to the opposing party is necessary to sanction a party for failure to preserve.

Here, there is no doubt that JSA has suffered prejudice as a result of the Edwardses' failure to preserve the ESI in question. First, JSA is deprived of the ability to substantiate or refute the authenticity of the alleged Messages, which hinders JSA's ability to determine their own legal posture and strategy and formulate their legal arguments. Plaintiffs' failure to preserve the ESI in question has also cost JSA time and money in litigating the existence, location, and authenticity of the Messages. Further, JSA currently is, and would continue to be, severely prejudiced if this Court permitted Plaintiffs to introduce screenshots or other evidence, including testimonial evidence, of the alleged Messages even after Edwards, Jr. deliberately deleted his Facebook account, thus permanently preventing access to the actual alleged Messages. Whereas Courts often issue a spoliation jury instruction when pertinent evidence is spoliated, even absent a showing of bad faith,[10] here the more

---

[10] *See, e.g., Estate of Esquivel v. Brownsville Indep. Sch. Dist.*, No. 1:16-cv-40, 2018 WL 7050211, at *6–7 (S.D. Tex. Nov. 20, 2018) (issuing a spoliation instruction where the defendant lost important evidence); *see also Villalon v. Cameron County*, No. 1:15-cv-00161, 2017 U.S. Dist. LEXIS 222483 (S.D. Tex. Jun. 22, 2017) (granting spoliation sanctions under Rule 37(e)(1) despite lack of proof that defendants acted in bad faith); *Nuvasive, Inc. v. Madsen Med., Inc.,* No. 13cv2077, 2016 WL 305096, at *2 (S.D. Cal. Jan. 26, 2016) (holding that a similar instruction was appropriate where plaintiff had failed to preserve text messages, but there was no evidence of intentional spoliation); *Cahill v. Dart*, No. 13-cv-361, 2016 WL 7034139, at *5 (N.D. Ill. Dec. 2, 2016) (holding that because the court found certain video footage was lost but the loss was unintentional, the jury would be instructed that defendant had a duty to preserve the video but did not).

obvious relief for curing the above-described prejudice is to exclude the specific items of evidence that Plaintiffs have presented as to the Messages in question.

Further, the more important evidence is to the resolution of a case, the more severe the prejudice is to a party when the evidence is not preserved. FED. R. CIV. P. 37(e)(1) advisory committee's note to 2015 amendment ("An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation."); *accord Villalon v. Cameron County*, No. 1:15-cv-00161, 2017 U.S. Dist. LEXIS 222483 (S.D. Tex. Jun. 22, 2017). Here, the Messages allegedly sent to Edwards, Jr. are critical to Plaintiffs' causes of action. The Messages precipitated the entire sequence of events that led to the filing of Plaintiffs' complaint, and comprise a substantial component, if not the entirety, of the purported factual basis for Plaintiffs' allegations of racial discrimination. Consequently, Plaintiffs' failure to preserve the requested data has greatly prejudiced JSA.

Finally, Rule 37(e)(1) authorizes a court to "order measures no greater than necessary to cure the prejudice" to a party resulting from the failure to preserve ESI. Here, the prejudice that JSA suffers from its inability to examine the Facebook data in question is the unfair imbalance between Plaintiffs' and JSA's ability to procure, examine, and present evidence. While Plaintiffs can offer evidence of the alleged Messages in the form of screenshots and testimony or other evidence related to the screenshots, JSA is deprived of the opportunity to authenticate and potentially rebut this evidence by relying on the Facebook data it requested. Of course, JSA may still offer expert testimony that screenshots in general can be fraudulently created with

relative ease, but this is an inadequate substitute for an opportunity to examine the particular Facebook data at issue here. The Court finds that prohibiting Plaintiffs from offering any evidence of the alleged Messages effectively cures the prejudice to JSA that has resulted from Plaintiffs' failure to preserve evidence that Plaintiffs manifestly knew or should have known was critical to this case.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Junior State of America Foundation, Inc.'s Motion to Dismiss Pursuant to Rule 37 for Failing to Comply with a Court Order to Produce Electronically Stored Information, (Dkt. #94), is **GRANTED in part**.

It is hereby **ORDERED** that Plaintiffs' October 2020 disclosures containing the Dirr affidavit, the Rubio affidavit, and any information preserved or produced by Dirr or Rubio, are excluded on the basis of Rule 37(c).

It is further **ORDERED** that the Court **GRANTS** JSA's request to exclude, on the basis of Rule 37(e), all evidence and testimony of the purported text exchange between Plaintiff Daniel Edwards, Jr. and Cole Harper.

**So ORDERED and SIGNED this 23rd day of April, 2021.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE